IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LUCAS FENIK,
       Plaintiff,

v.                                  Case No. 3:06cv514/RV/EMT

ONE WATER PLACE, et al.,
       Defendants.
_____/

**O R D E R**

      This cause is before the court upon Plaintiff's Motion to Disqualify, Strike Pleadings of One Water Place, LLC, Set Evidentiary Hearing, and Stay Proceedings and Supporting Memorandum of Law (Doc. 32); Motion to Stay Proceedings and Supporting Memorandum of Law (Doc. 33); Emergency Motion to Stay Proceedings, to Quash Notices of Depositions, for Protective Order and Supporting Memorandum of Law (Doc. 34); and Defendants' responses thereto (Docs. 36, 38).

I.      FACTS AND ISSUES

      This action arises out of a purchase agreement involving the sale of two condominium units at One Water Place Condominium in Destin, Florida (*see* Doc. 1). Plaintiff commenced this action in November 2006 alleging four claims against Defendants One Water Place, LLC ("OWP"); Real Estate International, Inc. ("REI"); Sterling Realty, LLC ("SR"); and Jason Kyle Elder ("Elder") (*id.*). In Count I, Plaintiff alleges violation of the federal Interstate Land Sales Disclosure Act, which requires sellers of certain types of real property to provide a property report to purchasers before signing purchase agreements and prohibits misrepresentation by the seller with respect to sales of such property (*see id.*). In Count II, Plaintiff alleges violation of § 718.506, Florida Statutes, which provides a right of action against a developer for publication of false and misleading information in advertising or promotional materials concerning a condominium development (*see id.*). In Count III, Plaintiff has alleged fraud and misrepresentation by Defendants in inducing Plaintiff to enter into

purchase agreements regarding the sale of two condominium units to Plaintiff (*see id.*).  In Count IV, Plaintiff has alleged Defendants were negligent in their dealings and transactions with Plaintiff (*see id.*).  Attorney Michael J. Schofield represents REI, SR, and Elder, and Attorney K. Jill Vandagriff, of the Chesser & Barr law firm ("C & B"), represents OWP.  On December 11, 2006, the attorneys filed answers to Plaintiff's complaint on behalf of their respective clients.

In the instant dispute, Plaintiff alleges that sometime after being noticed on or about January 16, 2007 for the taking of his deposition, he "discovered that he is a current client of counsel for Defendant [OWP]"[1] (Doc. 34 at 2; Doc. 33 at 2; *see* Doc. 32 at 1–2; Doc. 32, Attach. 1 (Affidavit of Lucas Fenik)) (emphasis supplied).  Plaintiff has provided an affidavit alleging that he is a current client of C & B and has been since early 2005, and that C & B "currently represents [him] in several legal matters," including a landlord/tenant dispute, incorporating a real estate investment company, a dispute involving a boat purchase, and, in general, providing "ongoing legal advice on several real estate and business matters" (Doc. 32, Attach. 1).  Plaintiff further alleges that he has divulged "confidential information" to C & B regarding his real estate, financial, and business matters, including information relating to the real estate that is the subject of this lawsuit (*see id.*).  Thus, Plaintiff seeks, in pertinent part, an order directing counsel for Defendant OWP to withdraw from all further representation of OWP, striking all pleadings filed to date by counsel for OWP, staying all proceedings (including discovery—which would include cancelling depositions scheduled for February 13 and 20, 2007), and requiring new counsel to take over the representation of OWP.  Additionally, Plaintiff asks that an evidentiary hearing be held on his motions.  Defendants oppose Plaintiff's motions, have submitted an affidavit in support of their opposition, and contend that an evidentiary hearing is unnecessary.

II.     DISCUSSION

Initially, after a careful review of the pleadings and consideration of all issues raised by Plaintiff, it is the opinion of the undersigned that an evidentiary hearing is not required for disposition of this matter.  *See* Allstate Ins. Co. v. Bowne, 817 So.2d 994, 998 (Fla. 4th DCA 2002) (a hearing is not required on every motion to disqualify counsel, even when conflicting affidavits

---

[1] Plaintiff admits that he is not a present or former client of Attorney Vandagriff personally; rather, Plaintiff alleges, under oath, that he is and was a client of D. Michael Chesser of C & B (Doc. 32, Attach. 1 at 2).

have been submitted).[2]   Further, it is the opinion of the undersigned that the pleadings and attachments before the court show that Plaintiff is not entitled to the relief he seeks.

Motions to disqualify are governed by two sources of authority.  First, attorneys are bound by the local rules of the court in which they appear.  The Rules of Professional Conduct of the Rules Regulating the Florida Bar govern the professional conduct of members of the bar of the United States District Court of the Northern District of Florida. N.D. Fla. Loc. R. 11.1(E)(1).  *See also* Bayshore Ford Truck Sales, Inc. v. Ford Motor Co., 380 F.3d 1331, 1338 (11th Cir. 2004).  Second, federal common law also governs attorneys' professional conduct because motions to disqualify are substantive motions affecting the rights of the parties.  *See* Fed. Deposit Ins. Corp. v. U.S. Fire Ins. Co., 50 F.3d 1304, 1312 (5th Cir. 1995); Cole v. Ruidoso Mun. Sch., 43 F.3d 1373, 1383 (10th Cir. 1994).  If a district court bases its disqualification order on an allegation of an ethical violation, "the court may not simply rely on a general inherent power to admit and suspend attorneys, without any limit on such power."  Schlumberger Techs., Inc. v. Wiley, 113 F.3d 1553, 1561 (11th Cir. 1997).  Instead, "[t]he court must clearly identify a specific Rule of Professional Conduct which is applicable to the relevant jurisdiction and must conclude that the attorney violated that rule."  *Id.* Here, Rules 4-1.7 and 4-1.9 of the Rules Regulating the Florida Bar are applicable.

Rule 4-1.7 of the Rules Regulating the Florida Bar governs disqualification for conflicts of interest with a current client.  Rule 4-1.7 provides in relevant part:

> (a) Representing Adverse Interests. Except as provided in subdivision (b), a lawyer shall not represent a client if:
>> (1) the representation of 1 client will be directly adverse to another client; or
>> (2) there is a substantial risk that the representation of 1 or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
> (b) Notwithstanding the existence of a conflict of interest under subdivision (a), a lawyer may represent a client if:
>> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>> (2) the representation is not prohibited by law;

---

[2]Although not binding on this court, the opinions of the Florida courts are persuasive.  *See* In re Disciplinary Proceedings of John Doe, 876 F. Supp. 265, 269 n.5 (M.D. Fla. 1993).

> (3) the representation does not involve the assertion of a position
> adverse to another client when the lawyer represents both clients in
> the same proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing or clearly stated on the record at a hearing.

R. Regulating Fla. Bar 4-1.7.

Rule 4-1.9 of the Rules Regulating the Florida Bar governs disqualification for conflicts of interest with a <u>former</u> client. Rule 4-1.9 provides in relevant part:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
> (a) represent another person in the same or a substantially related
> matter in which that person's interests are materially adverse to the
> interests of the former client unless the former client gives informed
> consent; or
> (b) use information relating to the representation to the disadvantage
> of the former client except as rule 4-1.6 would permit with respect to
> a client or when the information has become generally known.

R. Regulating Fla. Bar 4-1.9.

The Comment to Rule 4-1.9 provides further guidance on whether two matters are "substantially related:"

> When a lawyer has been directly involved in a specific transaction, subsequent
> representation of other clients with materially adverse interests clearly is prohibited.
> On the other hand, a lawyer who recurrently handled a type of problem for a former
> client is not precluded from later representing another client in a wholly distinct
> problem of that type even though the subsequent representation involves a position
> adverse to the prior client. . . . The underlying question is whether the lawyer was so
> involved in the matter that the subsequent representation can be justly regarded as
> a changing of sides in the matter in question.
>
> Matters are "substantially related" for purposes of this rule <u>if they involve the
> same transaction or legal dispute</u>, or if the current matter would involve the lawyer
> attacking work that the lawyer performed for the former client.  For example, a
> lawyer who has previously represented a client in securing environmental permits
> to build a shopping center would be precluded from representing neighbors seeking
> to oppose rezoning of the property on the basis of environmental considerations;
> however, the lawyer would not be precluded, on the grounds of substantial
> relationship, from defending a tenant of the completed shopping center in resisting
> eviction for nonpayment of rent.

R. Regulating Fla. Bar 4-1.9 cmt. (emphasis supplied).  A recent case from the First District Court

of Appeals of Florida illustrates when Rule 4-1.9 correctly applies to disqualify counsel.  In <u>Estright v. Bay Point Improvement Assoc., Inc.</u>, 921 So. 2d 810, 811 (Fla. 1st DCA 2006), an attorney representing a homeowners' association drafted the association's governing documents that, among other things, allowed for the imposition of fines and liens.  The association levied fines against one of its members, Estright, and brought suit against her to foreclose the lien.  *Id.*  Estright retained the services of the same attorney who had drafted the association rules and the association moved to disqualify him from representing Estright.  *Id.*  The court noted that Rule 4-1.9 is "aimed at the problem of attorneys 'switching sides,' " and upheld the trial court's order to disqualify. *Id.* (citing <u>Kenn Air Corp. v. Gainesville-Alachua County Reg. Airport Auth.</u>, 593 So.2d 1219, 1222 (Fla. 1st DCA 1992)).

Although the court may order disqualification, motions to disqualify are viewed with disfavor as an extraordinary remedy that should not be granted unless absolutely necessary.  <u>In re Jet 1 Ctr., Inc.</u>, 310 B.R. 649, 654 (Bankr. M.D. Fla. 2004); <u>First Impressions Design and Mgt., Inc. v. All That Style Interiors, Inc.</u>, 122 F. Supp. 2d 1352, 1355 (S.D. Fla. 2000) (nothing that "disqualification of a party's chosen counsel is an extraordinary remedy not generally in the public interest—a remedy that should be employed only sparingly"); <u>Herschowsky v. The Guardianship of Herschowsky</u>, 890 So. 2d 1246, 1247 (Fla. 4th DCA 2005) (explaining that "[i]t is well settled that disqualification, contrary to the wishes of counsel and client, should be resorted to rarely").  A client's choice of counsel is entitled to "substantial deference," and any movant seeking to sever that relationship through disqualification must meet a high standard of proof.  <u>Jet 1 Ctr.</u>, 310 B.R. at 654.  The party bringing the motion to disqualify bears the burden of proving the grounds for disqualification.  <u>In re BellSouth Corp.</u>, 334 F.3d 941, 961 (11th Cir. 2003) (citing <u>Duncan v. Merrill Lynch</u>, 646 F.2d 1020, 1028 (5th Cir. Unit B 1981), *rev'd on other grounds*, <u>Gibbs v. Paluk</u>, 742 F.2d 181, 185 (5th Cir. 1984)).  "Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if 'compelling reasons' exist."  *Id.*  A disqualification order "is a harsh sanction, often working substantial hardship on the client" and should therefore "be resorted to sparingly."  <u>Norton v. Tallahassee Mem'l Hosp.</u>, 689 F.2d 938, 941 n.4 (11th Cir. 1982).

To prevail on a motion to disqualify under Rule 4-1.9, the movant must show: (1) the existence of a prior attorney/client relationship, and (2) that the matters in the pending suit are

substantially related to the previous matter or cause of action.  Cox v. Am. Cast Iron Pipe Co., 847 F.2d 725, 728 (11th Cir. 1988); *see* Bochese v. Town of Ponce Inlet, 267 F. Supp. 2d 1240, 1244 (M.D. Fla. 2003); Estate of Jones v. Beverly Health and Rehab. Servs., Inc., 68 F. Supp. 2d 1304, 1309 (N.D. Fla. 1999); Smalley Transp. Co. v. Prime Computer, Inc., 137 F.R.D. 397, 398 (M.D. Fla. 1991).  The Eleventh Circuit has made it clear that "only when the moving party delineates with specificity the subject matter, issues, and causes of action presented in [the] former representation can the district court determine if the substantial relationship test has been met."  Duncan, 646 F.2d at 1029; *see* Cox, 847 F.2d at 730 (The court can only determine if the substantial relationship test has been met when the moving party delineates with specificity the subject matters, issues, and causes of action presented in former representation (citing Duncan, 646 F.2d at 1029)).  The court is obligated to "look behind mere facial similarities or dissimilarities between the prior and pending cases and focus on the precise nature of the subject matters presented in the two representations."  Duncan, 646 F.2d at 1031.

Here, Plaintiff has alleged conflicts under both Rule 4-1.7 and Rule 4-1.9 of the Rules Regulating the Florida Bar (*see* Doc. 32 at 3–7).  First, under Rule 4-1.7, Plaintiff alleges a conflict because he claims C & B currently represents him (*see* Doc. 32 at 3–4; Doc. 32 Attach. 1 at 2).  He further asserts that the conflict is imputed to all lawyers in the C & B firm through Rule 4-1.10(a) (no lawyers associated in a firm "shall knowingly represent a client when any 1 of them practicing alone would be prohibited from doing so by rule 4-1.7 or 4-1.9").  Second, if not a current client, Plaintiff alleges that he is a former client of C & B, and therefore, the firm may not now represent OWP in the same or a substantially related matter in which OWP's interests are materially adverse to Plaintiff's (Doc. 32 at 4).  In support, Plaintiff states that C& B "has provided the Plaintiff with ongoing counsel and legal advice regarding all of Plaintiff's real estate matters since early 2005," and C& B "has obtained extensive, confidential information from Plaintiff which could be used to [Plaintiff's] disadvantage in this matter" (Doc. 32 at 5).  Again, Plaintiff seeks to impute this disqualification to all attorneys of the C & B firm pursuant Rule 4-1.10(a).

In response, the C & B firm emphatically asserts that it is not currently handling any matter for Plaintiff.  In support, the firm has provided an affidavit that describes, in detail, its former representation of Plaintiff.  Specifically, the affidavit describes C & B's involvement with Plaintiff

in four distinct matters: a landlord-tenant bankruptcy dispute, the incorporation of a limited liability company for Plaintiff's fiancé, the demand for repayment of a boat deposit, and the review of a lease and option to purchase property located at 519 Osceola Drive (*see* Doc. 38, Attach. 1 (Affidavit of D. Michael Chesser)).  Attached to the affidavit are billing records and miscellaneous letters and documents supporting C & B's assertion that each matter concluded, at the latest, in August 2006 and that Plaintiff is not a current client of the firm.[3]  Unlike Plaintiff's broad assertion that he has "been a client since 2005," the firm's affidavit provides details, dates, correspondence, and billing records.  Moreover, although Plaintiff alleges that he believes C & B "currently represents [him] in several legal matters," the matters he identifies are the same as those detailed in Mr. Chesser's affidavit, but Mr. Chesser's affidavit clearly indicates that the representation regarding those matters has ceased.  Furthermore, a party's subjective "thoughts" that an attorney-client relationship exists, in the absence of facts clearly showing such a belief is reasonable, is insufficient to support disqualification.  *See* Gen. Elec. Real Estate Corp. v. Weisberg, Inc., 605 So. 2d 955, 956 (Fla. 4th DCA 1992).  Finally, the court notes Plaintiff's assertion that C & B has provided legal advice "regarding all of Plaintiff's real estate matters" since early 2005 (Doc. 32 at 5) (emphasis added), but Plaintiff fails to explain, if that is indeed the case, why C & B was not retained to represent him in the instant matter.  It is apparent that Mr. Chesser's understanding of the situation was certainly not that all of Plaintiff's real estate matters were to be handled by C & B.  Mr. Chesser noted that Plaintiff "was unusually independent, and seems to want to handle his own affairs.  He never discussed whether he had other lawyers involved in other matters, but I had the clear impression he had many other matters going than we discussed." (Doc. 38, Attach. 1 at 3).  Thus, this court concludes that Plaintiff is not a current client of C & B and neither Ms. Vandagriff nor the C & B firm should be disqualified from representing OWP on that basis.

Regarding Plaintiff's second contention, the parties do not dispute that Plaintiff was a former client of C & B.  Thus, the court must determine whether C & B's representation of OWP violates the strictures of Rule 4-1.9.  Such representation would be precluded if:  1) C & B's representation of OWP is the same or is substantially related to the matters on which it previously represented

---

[3]Plaintiff has not contacted C& B regarding any matter since June 2006 (*see* Doc. 38, Attach. 1, ¶ 11).

Plaintiff, and 2) OWP's interests are materially adverse to Plaintiff's interests.  Clearly, the parties have adverse interests, so the question becomes whether the representation involves the same or a substantially related matter.

C & B contends that the former representation concerned wholly unrelated and minor matters and that Plaintiff has not satisfied "his burden to delineate with specificity the subject matter, issues, and causes of action that inextricably bind [Plaintiff's] former representation with [C & B's] current defense of OWP" (Doc. 38 at 5, 8) (internal quotations and citations omitted).  Additionally, counsel for the other Defendants argues that even if there had previously been an attorney-client relationship between Plaintiff and C & B, Plaintiff's "self serving [sic] Affidavit with only general assertions concerning [Chesser's] past legal counsel [suggests], at most, a 'superficial relationship' with the present action" (Doc. 36 at 6).

The court agrees that Plaintiff has not met his obligation to "delineate[] with specificity the subject matter, issues, and causes of action presented in [the] former representation."  *See* Duncan, 646 F.2d at 1029; *see also* BellSouth, 334 F.3d at 961 (the party bringing the motion to disqualify bears the burden of proving the grounds for disqualification).  Although Plaintiff generally identified the nature of the prior representation, he has not demonstrated its relationship to the instant lawsuit.[4] The facts reveal that C & B represented Plaintiff on four matters, none of which relate to the current OWP litigation (*see* Doc. 38, Attach. 1).  Further, the record indicates that Attorney Vandagriff specifically consulted with Attorney Chesser in November 2006 regarding any potential conflict because of C & B's former representation of Plaintiff, and Attorney Vandagriff was advised that no information was gained from Plaintiff that could be used to his detriment (Doc. 38, Attach. 1, ¶ 11). The court finds it important that C & B considered the matter of a potential conflict, <u>prior to undertaking its representation of OWP</u>, and concluded that no such conflict existed.  In other words,

---

[4]Although Plaintiff alleges to have obtained advice from C & B regarding the purchase of the units that are the subject of the instant litigation, and further, that "Mr. Chesser has consistently provided me legal advice and counsel regarding real estate matters I have encountered" (*see* Doc. 32, Attach. 1), Mr. Chesser has sworn under oath that Plaintiff's allegations are untrue, noting that the instant lawsuit is "not the same or even remotely related to the previous matters I and others in [C & B] previously handled for [Plaintiff]" (*see* Doc. 38, Attach. 1, ¶¶ 12, 14).  This court finds Mr. Chesser more credible than Plaintiff for reasons including, but not limited to, the following: 1) Mr. Chesser is an officer of this court, subject to serious sanctions (including disbarment) if he were to provide a false affidavit to this court; 2) his billing records and correspondence corroborate his affidavit (Plaintiff has provided no such corroboration); and 3) Mr. Chesser's affidavit is far more detailed than Plaintiff's and is unequivocal.

their position on the matter of a conflict has never changed.  Plaintiff, on the other hand, chose to initiate the pending litigation by using another law firm, even though he claims that C & B represents him in <u>all</u> of his real estate affairs.  Moreover, the court finds it curious that Plaintiff failed to recognize Ms. Vandagriff's affiliation with the C & B firm until now, even though Plaintiff alleges an ongoing relationship with the firm.  Furthermore, the timing of Plaintiff's objection (that is, the week prior to his scheduled deposition and just before certain discovery responses are due from him (*see* Doc. 33, Attach. 2)), is suspect.  Nevertheless, Plaintiff has not satisfied the legal standard for disqualification because he has not shown that C & B's prior representation is "substantially related" to the instant case.

III.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for disqualification shall be denied.  Plaintiff has also moved this court to strike pleadings, stay proceedings, quash notices of depositions, and enter a protective order due to the alleged conflict of interest between Plaintiff and C & B.  As this court has found no such conflict to exist,  Plaintiff's remaining motions shall also be denied.

Accordingly, it is **ORDERED**:

Plaintiff's Motion to Disqualify, Strike Pleadings of One Water Place, LLC, Set Evidentiary Hearing, and Stay Proceedings (Doc. 32); Motion to Stay Proceedings (Doc. 33); and Emergency Motion to Stay Proceedings, to Quash Notices of Depositions, and for Protective Order (Doc. 34) are **DENIED**.

**DONE AND ORDERED** this <u>14</u><sup>th</sup> day of February 2007.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**